49 CCPA
### Application of Hubert Cecil WYNNE.
### Patent Appeal No. 6746.

United States Court of Customs
and Patent Appeals.
May 18, 1962.

————◆————

Morrison, Kennedy & Campbell, New York City (Luther E. Morrison and S. Augustus Demma, New York City, of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Associate Judge JOSEPH R. JACKSON, Retired.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of method claim 9 and apparatus claim 10 in application Ser. No. 359,547, filed June 4, 1953, for "Manufacture of Flat Glass in Continuous Ribbon Form." Method claims 3, 7 and 11 and apparatus claim 12 stand allowed. The sole issue is patentability over the following references:

| De Bay | 972,166 | Oct. 11, 1910 |
| Clark | 1,424,155 | Aug. 1, 1922 |

Appellant's invention relates to the obtaining of a "fire finish" on flat glass produced in continuous ribbon form. As to the nature of a "fire finish," appellant's specification states:

"In the manufacture of glass objects such as drinking goblets the surfaces are brilliant because the surfaces set as a result of heat losses achieved solely by radiation, and by heat exchange with a gaseous medium. This result is referred to by glass makers as 'fire finish' ".

In simple terms, fire finish occurs when melted glass is allowed to cool out of contact with another surface.

Appellant's glass sheet is produced in the following manner. Molten glass from a melting tank passes through a spout which directs the glass between a pair of water-cooled casting rolls spaced apart by a distance equal to the desired thickness of the glass ribbon which emerges therefrom. During this operation the glass ribbon rapidly loses heat by conduction to the metal rolls, whereupon the ribbon surfaces in engagement therewith solidify quickly with a dull finish, or at least lacking in the degree of polish desired. The ribbon then passes along a flat supporting surface and beneath a refractory hood in which burners are located which "produce a sheet of flame which sweeps the whole upper surface of the ribbon [under the hood] * * * in the direction of the moving ribbon * * * the flame from each of the burners * * * moves in substantial parallelism with the ribbon, the flame from each burner being in nature a sheet of flame which progressively sweeps the surface of the moving ribbon as it passes through the heating chamber." During this operation, the top surface[1] of the

_____
1. Appellant's disclosure includes apparatus for placing a "fire finish" on both the top and bottom surfaces of the glass ribbon. This structure is not before us on appeal.

ribbon is remelted. Finally, appellant states in his specification that "after the ribbon * * * leaves the heating chamber * * * it is exposed to atmosphere and the remelted * * * surface sets solely by loss of heat due to radiation and to heat exchange with a gaseous medium, hence a fire finish is obtained." It is noted that appellant gets all the polish he wants from the flame and subsequent cooling alone, without any other operation on the glass.

The claims on appeal are:

"9. Method of manufacturing flat glass in continuous ribbon form characterized by forming the ribbon as it is flowed from a glass melting furnace under conditions to cause a surface of the ribbon to lose substantial heat by conduction, advancing the formed ribbon lengthwise and continuously, *forming a sheet of flame and directing it along said surface of the ribbon in substantial parallelism therewith and in the direction of movement of the ribbon to sweep progressively said surface of the advancing ribbon with the sheet of flame,* and to impart thereby heat to said surface to an extent at least to compensate for that heat in the surface lost during the forming of the ribbon, and then allowing the remelted surface to set solely due to radiation and to the cooling action of a gaseous medium in contact with said surface while maintaining said surface free from mechanical disturbing influences.

"10. An apparatus for manufacturing flat glass in continuous ribbon form, comprising means for continuously forming glass in ribbon form from a glass melting furnace including a casting member on which the ribbon is cast, said casting member causing the surface of the ribbon in contact therewith to lose substantial heat by conduction therewith, means for advancing the formed ribbon lengthwise and continuously away from said forming means, *means for forming a sheet*

*of flame and for directing it along said surface substantially parallel thereto and in the direction of movement of the ribbon to sweep progressively said surface during the movement of the ribbon* and to cause said surface to be remelted, and means for continuously advancing the ribbon with the remelted surface through a setting zone in which the only medium in contact with said surface is a gaseous medium to cause said surface to set solely due to radiation and to the cooling action of said gaseous medium." [Emphasis ours.]

As appellant states, claim 10 is directed to the apparatus for carrying out the method of claim 9. The above italicized passages are the aspect of the invention relied on to patentably distinguish over the references.

De Bay generally describes his invention and its purpose as follows:

"This invention relates to apparatus for making polished plate glass in an expeditious and economical manner and so as to dispense with the grinding or polishing usually employed in making this character of glass.

"The essential feature of the apparatus comprises means for forming a plate of glass, together with means for *fire finishing or polishing* both surfaces of the plate, and means for afterward supporting and conveying the plate to prevent clouding, marring or injuring the glazed or polished surfaces." [Our emphasis.]

The De Bay apparatus and method for producing glass ribbon differ from those disclosed by appellant primarily in three respects. First, three sets of rolls are used to size the ribbon coming from the furnace. The first two sets of rolls are cooled and longitudinally fluted. The third set of rolls is heated and these rolls "smooth out the corrugations or ridges formed in the plastic sheet by the first two pairs of rolls." Secondly, while De Bay, as does appellant, next passes

the glass ribbon or "plate" beneath a heating chamber or "furnace," De Bay, contrary to appellant, states, "It is not intended that the flame shall strike the plate." De Bay also states that the heat of the heating chamber or furnace, which is suspended with its open bottom adjacent the top surface of the ribbon,

> " * * * quickly melts a skin on the top surface of the plate, which when it cools forms the smooth glazed surface known as fire polish. The melting of the surface of the plate is liable to leave the same slightly waved or undulating, or the surface may be irregular from other causes * * *. To take out any waves, undulations or other irregularities, *the surface of the plate while still plastic is subjected to a smoothing action by means of a rubbing block 16* which is caused to rub very lightly over the surface, sufficient to smooth out the irregularities and undulations, but without disturbing the molten surface or in any way destroying or marring the glaze." [Emphasis ours.]

No such smoothing operation is included in appellant's process or apparatus.

Clark also is concerned with the production of a glass ribbon which is "pimple" free. The Clark ribbon is drawn vertically from a glass "bath" and then bent through a right angle over a roll to move horizontally. Immediately after passing over this roll, the ribbon passes over a "distributor" or slotted pipe from which "heated fluid is directed into contact with the under surface of the glass sheet." This "heated fluid" and its action are thus described by Clark:

> "The action of such means is substantially a 'fire-flashing' which is sufficient to fuse, or partially fuse, the immediate surface of the sheet to an extent *which will obliterate the objectionable pimpling of such surface.* This fire-flashing can be accomplished either by air preheated to the necessary temperature and directed *against the surface of the* glass or by gas or oil fumes directed

against such surface. In the drawing I have illustrated a distributor 5 for preheated air or gas." [Our emphasis.]

The Clark "distributor" appears to be coextensive with the width of the glass ribbon, as it obviously would have to be to accomplish its stated purpose. This "distributor" is formed "either with a continuous jet opening * * * or a plurality of staggered jet openings."

It is clear to us that Clark discloses contacting a glass ribbon with either a sheet or a series of jets of "heated fluid," which may be preheated air or "gas or oil fumes." The Clark drawing, however, discloses that the "distributor" jet or jets direct the flow of "fluid" against the glass ribbon in a direction to some extent *opposite* to the direction of movement of the ribbon and at an angle thereto. A cooling jet is also employed by Clark in "back of" the "distributor," i. e., away from the "distributor" in the direction of movement of the glass ribbon, "to solidify the softened surface, when found necessary." It is pointed in the same somewhat counterflow direction as the distributor.

The Patent Office rejection of claims 9 and 10 was on De Bay in view of Clark, it being the view of both the examiner and the board "that it would be obvious to a person of ordinary skill in this art to substitute Clark's flame for the radiant heating means of De Bay."

Appellant objects to this combination of references on several grounds. First, it is stated that De Bay specifically teaches that his flame should not strike the surface of the glass. Accordingly, it is argued, in effect, that the combined teachings of De Bay and Clark would not suggest use of the impinging heated fluid of Clark in the De Bay device because they are mutually inconsistent. Secondly, in appellant's September 3, 1957, amendment after final rejection, the undesirability of the Clark structure when considered alone was raised when appellant contended, inter alia, that Clark's stream of heated fluid "impinging on the surface of the ribbon at high

velocity and almost at right angles thereto, creates an impact resulting in the ploughing of the remelted surface of the glass." This is not supported by any proofs and is mere speculation so far as the record before us is concerned.

Appellant argues that Clark does not disclose "flames" contacting the surface of the glass ribbon. Clark, however, clearly discloses a wide choice of media which may be used to "fire flash" a surface of the glass ribbon, including "preheated" "air" and "gas or oil fumes" as all being suitable for his "fire flashing" operation. It is our opinion that one skilled in the art would consider it obvious to cause the emanation of "flames" from the Clark "distributor" if such is not, indeed, expressly disclosed in Clark's reference to gas and oil "fumes" as an alternative to preheated air. It surely would be obvious to use fire for fire flashing, though the term may not so require.

The main point for our consideration, however, is the obviousness of appellant's claimed feature of *directing his flames along the surface of his ribbon in substantial parallelism thereto and in the direction of movement thereof*. Neither De Bay nor Clark shows this feature.

Appellant alleges that the location and direction of his sheet of flame are important and unobvious for several reasons. In his September 3, 1957 amendment, previously noted, appellant listed four advantageous effects attributable to his particular flame direction. They are:

"(1) It sweeps over the surface to be remelted, so that the heat has little penetrative action and is localized mainly on the surface where it is required, while the integrity and physical form of the body of the glass is maintained with little or no disturbance.

"(2) It creates a heating zone of substantial length along the ribbon according to the length of the flame, thereby permitting the ribbon to move at a much faster rate than is permitted by Clark with his restricted heating zone.

"(3) It moves over the surface of the ribbon gently and with minimum of impact, and whatever impact there is, is transmitted in a sweeping direction tending to smooth out the surface rather than plough it.

"(4) It directs the heat away from the casting or sizing members or rolls where the ribbon is formed. The remelting zone must be located as close to these rolls as possible in order to conserve heat."

The position of the Patent Office Solicitor is that there is an ample basis for finding the claimed invention to be obvious in view of De Bay and Clark. With this we cannot agree. While we disagree with the view of appellant that Clark does not teach the use of a flame impinging on the glass to fire finish it, the flame which would be present in Clark's apparatus would impinge on the glass at an angle, rather than parallel to its surface, and in a direction opposite to the direction of movement, rather than in the same direction. Therefore, if this, the only relevant disclosure of Clark, were to be substituted for De Bay's radiant heating furnace, the claimed invention would not be produced. Furthermore, when De Bay's teaching is taken at face value it amounts to an instruction that flame impinging on the glass surface should not be used at all. We are therefore of the opinion that there is no suggestion in the references for such a combination of features. All these references amount to is two disclosures of different fire polishing methods which are contradictory and neither of which suggests doing it in the manner or with the apparatus disclosed and claimed by appellant.

For the above reasons, the decision of the board is reversed.

Reversed.

MARTIN, Judge, sat but did not participate because of illness.